UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PARNELL JAY FAIR,<br><br>　　　　　　　Plaintiff(s),<br><br>　v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>　　　　　　　Defendant(s). | Case No. 2:20-CV-1841 JCM (BNW)<br><br>ORDER |

    Presently before the court is defendant Brock Wentz's motion to dismiss plaintiff Parnell Fair's complaint (ECF No. 16), to which defendant Jenna A Doud joined (ECF No. 24); defendants Chasity Travis and University Medical Center's ("UMC") motion to dismiss Fair's complaint (ECF No 29), to which Doud joined (ECF No. 31); and defendant Scott Lee's motion to dismiss Fair's complaint (ECF No. 32), to which defendant Jesse Wells, Wentz, and Doud and joined (ECF Nos. 36, 38). No responses were filed to any of these motions. Instead, the parties stipulated for Fair to amend his complaint. (ECF No. 44).

    Also before the court is Wentz's motion to dismiss Fair's amended complaint (ECF No. 50), to which defendant Shain Howard, Doud, Wells, and Lee joined (ECF Nos. 51, 52, 53). Fair responded (ECF No. 54) and Wentz replied (ECF No. 59) with Doud, Wells, and Howard joining (ECF Nos. 62, 63).

    Also before the court is defendant Casey Roehr's motion to dismiss Fair's amended complaint (ECF No. 57), to which Doud, Wells, Wentz, Travis, and UMC joined (ECF Nos.

**James C. Mahan**
**U.S. District Judge**

61, 64, 65). Fair responded (ECF No. 67) and Roehr replied (ECF No. 68)[1] with Doud, Wells, Wentz, Travis, and UMC joining (ECF Nos. 69, 70, 73). Lee also replied (ECF No. 71)[2] with Doud, Wells, Travis, and UMC joining (ECF No. 72, 73).

I.   **BACKGROUND**

On October 7, 2018, at or around 2:41 a.m., Fair was arrested by defendant Lukas Turley, a police officer working for the Las Vegas Metropolitan Police Department. (ECF No. 46 at 7). During that arrest, Lukas allegedly tackled Fair from behind and landed on Fairs right leg, dislocating Fair's knee and disrupting multiple ligaments therein. (*Id.*).

Over the following hours, Fair pleaded for medical assistance and treatment due to the intense pain in his right leg. (*Id.* at 7–9). Despite Fair's pleas for medical treatment, roughly two hours passed before Turley brought Fair to the Clark County Detention Center ("CCDC"). There, CCDC medical personnel instructed Turley to immediately transport Fair to UMC. (*Id.* at 9).

According to Fair, Fair arrived at UMC at approximately 5:38 a.m. and was triaged by defendant Travis, a nurse working at UMC. (*Id.*). Fair alleges that Travis failed to perform a physical exam and incorrectly assessed Fair's circulation was "within defined limits." (*Id.*). At or around 5:44 a.m., defendant Doud, a physician's assistant working at UMC, performed Fair's initial evaluation and ordered X-rays for Fair's right femur and right tibia/fibula. (*Id.* at 10). Doud allegedly observed Fair's substantial pain, but incorrectly assumed against clear evidence that Fair's symptoms were "secondary to a compartment syndrome." (*Id.*).

Next, Fair alleges that, at 6:38 a.m., an inpatient orthopedic consultation was conducted by the "Orthopedic service," which included defendants Lee, Roehr, Howard, and Wentz, who were all doctors working at UMC. (*Id.*). Fair claims that the Orthopedic service

---

[1] While filed as a reply to ECF No. 54, the reply is clearly directed towards ECF No. 67. *See* ECF No. 68 at 7 n.6 (citing to ECF No. 67).

[2] While filed as a reply to the response to ECF No. 32, there is no response to ECF No. 32, and the reply is clearly directed towards ECF No. 67. *See* ECF No. 71 at 2 (discussing cases Fair cites in ECF No. 67).

failed to correctly interpret his injury and performed an unnecessary procedure. (*Id.* at 10–11). Similarly, Fair alleges that at 6:56 a.m., defendant Wells, also a doctor working at UMC, performed a diagnostic test on Fair, which Wells used to incorrectly diagnose Fair with compartment syndrome. (*Id.*).

Fair alleges that these failures added significant delay to Fair obtaining the correct treatment for his injury, a computed tomography angiography ("CTA"). (*Id.* at 11). Fair did not obtain a CTA until 11:50 a.m., approximately nine hours after his injury. (*Id.*). By time Fair's CTA results came back and the Orthopedic service contacted a vascular surgeon, non-party Dr. Mavroidis, Dr. Mavroidis determined that Fair's right leg was past the point of redemption. (*Id.* at 12). Accordingly, Dr. Mavroidis recommended and performed an amputation on Fair's right leg. (*Id.* at 12).

On October 2, 2020, over two years after Fair's amputation, Fair brought this matter alleging violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983 against all defendants and medical malpractice/professional negligence against UMC as an organization and defendants Doud, Wells, Lee, Roehr, Howard, Wentz, and Travis (collectively, the "Individual Providers") in their individual capacity. (ECF No. 1).

Two months later, after a flurry of motions to dismiss from UMC and the Individual Providers (ECF Nos. 16, 29, 32), the parties stipulated (ECF No. 44) that Fair would amend his complaint to, *inter alia*, remove the medical malpractice/professional negligence claim with prejudice. On December 10, 2020, Fair filed his amended complaint to plead only the Section 1983 claim—this time against all defendants. (ECF No. 46).

Now, through two motions to dismiss and several joinders to each, UMC and the Individual Providers move to dismiss the amended complaint for a failure to state a claim for relief. (ECF Nos. 50, 51, 52, 53, 57, 61, 64, 65).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In other words, a pleading must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss.  First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79.  Legal conclusions are not entitled to this assumption of truth.  *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed.  *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment.  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Under Rule 15(a), the court should "freely" grant leave to amend "when justice so requires," and absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The court should grant leave to amend "even if no request to amend the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## III. DISCUSSION

### A. The motions to dismiss Fair's original complaint are denied as moot

As an initial matter, the motions to dismiss Fair's original complaint (ECF Nos. 16, 29, 32), largely concern Fair's second claim for relief, the medical malpractice/professional negligence claim. As Fair amended his complaint to remove that claim and the new motions to dismiss (ECF Nos. 50, 57) cover Fair's other Section 1983 claim, the original motions to dismiss are moot. Accordingly, the court denies as moot ECF Nos. 16, 29, and 32.

### B. The motions to dismiss Fair's amended complaint are granted

Fair's Amended complaint pleads one cause of action against all defendants: violation of the Eighth and Fourteenth Amendments under 42 U.S.C. §1983 ("Section 1983"). (ECF No. 46 at 12–17).

According to Fair:

> "[A]ll Defendants (i) acted under color of state law, (ii) refused to timely and properly treat [] Fair's serious medical condition . . . , and (iii) made a deliberate and intentional decision to not provide [] Fair with the appropriate, necessary, and timely medical attention and care he desperately needed . . . ."

(*Id.* at 13).

Defendants file two motions to dismiss Fair's amended complaint. (ECF Nos. 50, 57). Wentz's motion (ECF No. 50), joined by Doud, Wells, Howard, and Lee, avers that Fair has failed to state a claim for relief because 1) Fair's claims must be resolved under NRS 41A *et seq.* and not Section 1983, and 2) Fair's claim is thus time barred under NRS 41A.097(2). (ECF No. 50 at 3).

Roehr's motion (ECF No. 57), joined by Doud, Wells, Wentz, Travis, and UMC, avers that Fair's claim is subject to dismissal under Rule 12(b)(6) because 1) failure to properly diagnose and treat a medical condition sound in professional negligence and do not rise to a level of deliberate indifference required for a Section 1983 claim, and 2) Fair's claim is time-barred under Nevada's one-year statute of limitations for actions claiming injury or death brought against healthcare providers. (ECF No. 57 at 2).

James C. Mahan
U.S. District Judge

- 5 -

While filed separately, the motions to dismiss are substantially similar. Both motions essentially contend that 1) Fair's amended Section 1983 claim is a thinly veiled attempt to plead the time barred medical malpractice/professional negligence claim from Fair's original complaint; 2) Fair's Section 1983 claim is nevertheless time barred because Section 1983 claims use state law statutes of limitation; and 3) even if Fair's Section 1983 claim is not time barred, Fair fails to sufficiently plead facts establishing that the Individual Providers were deliberately indifferent to Fair's medical condition.

The court reviews each argument in turn.

### 1. Fair's amended complaint alleges neither medical malpractice nor professional negligence

To start, the court will not delve into the defendants' contention that Fair's Section 1983 claim is simply a medical malpractice or professional negligence claim which Fair attempts to conceal with artful pleading. (*See* ECF Nos. 50 at 5–7, 57 at 6). The parties specifically stipulated to dismiss that state medical claim. (ECF No. 44). Thus, the court reads the allegations in Fair's complaint and reviews the defendants' motions to dismiss as they concern Fair's Section 1983 claim for violating his Eighth and Fourteenth Amendment rights.

### 2. Fair's Section 1983 claim is not time barred

Section 1983 does not contain a statute of limitation. In view of that absence, the Supreme Court has held that "[Section] 1983 claims are best characterized as personal injury actions." *Wilson v. Garcia*, 471 U.S. 261, 276, 280 (1985). Additionally, "where state law provides multiple statutes of limitations for personal injury actions, courts considering [Section] 1983 claims should borrow the State's general or residual personal injury statute of limitations." *Owens v. Okure*, 488 U.S. 235, 235, 109 S. Ct. 573, 574, 102 L. Ed. 2d 594 (1989).

This court sits in the State of Nevada. All alleged conduct relevant to this matter occurred in Nevada. Thus, the court borrows Nevada's personal injury statute of limitation for this Section 1983 claim.

James C. Mahan
U.S. District Judge

- 6 -

Defendants contend that Nevada Revised Statute 41A.097 provides the appropriate statute of limitation of one year for Fair's Section 1983 claim because the claim is for an injury relating to professional negligence of a healthcare provider. (ECF No. 50 at 7, 57 at 10–14). Fair contends that Nevada Revised Statute 11.190(4)(e) provides the appropriate statute of limitation of two years because it provides the general personal injury limit. (ECF No. 67 at 8–9).

Considering the Supreme Court's instructions in *Wilson* and *Owens* to borrow the State's general statute of limitation, this court agrees with Fair. The appropriate statute of limitation for this matter is Nevada's two-year general limit for personal injury actions. NEV. REV. STAT. 11.190(4)(e).

The conduct alleged in Fair's complaint occurred on October 7, 2018. (*See* ECF No. 46). Fair brought this matter on October 2, 2020, less than two years later. (ECF No. 1). Accordingly, Fair's Section 1983 action is not time barred.

> *3. Fair fails to plead a plausible claim for relief from Fourteenth Amendment violations under Section 1983*

There are two elements to a Section 1983 claim: (1) the conduct complained of must been under the color of state law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *Jones v. Cmty. Redev. Ctr. of L.A.*, 733 F.2d 646, 649 (9th Cir. 1984).

Against individuals, liability attaches under Section 1983 only when the plaintiff plausibly alleges "that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, to survive the Individual Providers' motions to dismiss, Fair must show that each Individual Provider independently violated his constitutional rights.

Against a municipal organization, "[l]iability will lie . . . only if a plaintiff shows that his constitutional injury was caused by employees acting pursuant to an official policy or 'longstanding practice or custom,' or that the injury was caused or ratified by an individual with 'final policy-making authority.'" *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d

1143, 1151 (9th Cir. 2011) (citing *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (internal quotation marks and citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, Fair can only maintain a Section 1983 claim against UMC if UMC's employees committed constitutional violations.

### a.  The conduct complained of was under color of state law

No parties dispute that the defendants were acting under color of state law in their treatment of Fair. All Individual Providers were working for defendant UMC, a public medical institution which operates entirely under authority of state law. *See Chudacoff*, 649 F.3d at 1150. Thus, the court determines whether the Individual Providers' conduct subjected Fair to a deprivation of constitutional rights.

### b.  The conduct did not subject Fair to a deprivation of constitutional rights

At all times relevant to Fair's amended complaint, Fair was a pretrial detainee and not a convicted prisoner. Thus, the court determines his Section 1983 claim in the context of a pretrial detainee.

"[M]edical care claims brought by pretrial detainees [] 'arise under the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishment Clause.'" *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) (quoting *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1069–70 (9th Cir. 2016)). Thus, despite Fair pleading for violations of his Eighth Amendment rights, the court determines whether the Individual Providers violated Fair's Fourteenth Amendment rights.

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Id.* at 1124–25 (quoting *Castro*, 833 F.3d at 1070). Deliberate indifference is a "stringent standard of fault," requiring proof that a defendant "disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

. . .

. . .

James C. Mahan
U.S. District Judge

- 8 -

To prove objective deliberate indifference, a pretrial detainee must show:

(1) the defendant made an intentional decision with respect to conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take [objectively] reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125.

Here, Fair pleads separate allegations for each of the Individual Providers' conduct. Travis "failed to recognize that [] Fair's right knee was unstable . . . [and] failed to perform a physical exam" that would have led to a proper diagnosis. (ECF No. 46 at 9). Doud "incorrectly assumed that []Fair's cold, pulseless and numb right lower extremity was secondary to compartment syndrome." (*Id.* at 10). Wells "failed to correctly interpret [Fair's] compartmental pressures and therefore incorrectly diagnosed [] Fair with a compartment syndrome . . . . [and] failed to perform a physical exam" that would have led to a proper diagnosis. (*Id.*). Lee, Roehr, Howard, and Wentz "failed to correctly interpret the compartmental pressures and physical evidence . . . . [and] therefore incorrectly diagnosed [Fair] with a compartment syndrome," as well as "failed to perform a physical exam . . .[and] failed to order a CTA of the right leg," both of which would have led to a proper diagnosis. (*Id.* at 11).

According to Fair, the Individual Providers' conduct constituted a series of "deliberate and intentional decision[s] not to provide [Fair] with the appropriate, necessary, and timely medical attention and care he desperately needed . . . ." (*Id.* at 13). These "deliberate and intentional decision[s] to deny [] Fair of needed medical care and delay and interference with needed medical treatment, put [] Fair at substantial risk of suffering serious bodily harm, including the loss of his right leg, and even death." (*Id.*).

Additionally, Fair pleads that the Individual Providers:

[R]efused to take reasonable and available measures to abate or reduce the risk of serious bodily harm, even though a reasonable person under the circumstances would have understood the severity of [] Fair's condition and

the high degree of risk involved, making the consequences of their failure to properly treat Mr. Fair's condition obvious.

(*Id.*).

Finally, Fair outlines a series of the Individual Providers' "refusals:"

(1) refusing to acknowledge that Mr. Fair's right knee was unstable; (2) refusing to timely conduct a physical examination that would have identified his dislocated right knee with disruption of multiple ligaments and a popliteal artery occlusion; (3) refusing to timely order a CTA; (4) refusing to timely and correctly interpret the compartmental pressures; (5) refusing to timely request a vascular surgeon; (6) refusing to perform a physical exam prior to surgery; and (6) performing an unnecessary and incorrect right calf fasciotomy. Defendant UMC and the Individual Providers' deliberate indifference to Mr. Fair's serious medical condition resulted in a nine (9) hour delay in the proper medical care, which was well beyond the time available to salvage Mr. Fair's right leg.

(*Id.*).

As previously discussed, the court must strike all conclusory allegations before it may determine whether the remaining *plausible* factual allegations state a claim for relief. *Twombly*, 550 U.S. at 562. "[L]abels and conclusions" and "formulaic recitation of the elements of a cause of action" do not survive this process. *Iqbal*, 556 U.S. at 678.

First, Fair's allegation that "a reasonable officer, emergency medical responder, doctor or actor under the circumstances would have understood the high degree of risk involved, making the consequences of Defendants' failure to act obvious and the cause of the loss of Mr. Fair's right leg" (ECF No. 46 at 14) is a threadbare recitation of the elements of Fair's Section 1983 claim. Thus, the court strikes this allegation. *See Iqbal*, 556 U.S. at 678.

Next, Fair's allegations that the Individual Providers "refused" to treat him are conclusory. Fair alleges that the Individual Providers "refused" to treat him because the deliberate indifference standard requires "intentional decisions," not failures to meet a standard of care. *See Gordon*, 888 F.3d at 1125.

While the court must draw all inferences in favor of Fair, it need not accept factual allegations unless they are *plausible*. *See Twombly*, 550 U.S. at 562. Fair does not plead plausible facts supporting a reasonable inference that the Individual Providers each "refused" to properly diagnose and treat him. For instance, Fair does not claim that each Individual

**James C. Mahan**
**U.S. District Judge**

- 10 -

Provider saw Fair, stated that he was not worth properly diagnosing, and intentionally decided to give him improper medical treatment over Fair's objections.

However, Fair does allege that "[a]ccording to emergency medicine and orthopedic literature, [] Doud should have immediately ordered a [CTA] upon discovering any signs of impaired circulation, . . . diminished or absent pulses on presentation with color or temperature changes below the level of the knee," which were Fair's symptoms. (ECF No. 46 at 10). Fair then alleges that the other Individual Providers also failed to order a CTA. (*Id.* at 11).

Accepting as true that emergency medicine and orthopedic literature instructs a CTA for patients presenting with Fair's symptoms, it is at least conceivable that, by not ordering a CTA, the Individual Providers were deliberately indifferent to Fair's symptoms because they did not appreciate the high degree of risk involved with his condition. *See Gordon*, 888 F.3d at 1125.

Nevertheless, Fair's amended complaint refutes any reasonable inference that the Individual Providers were deliberately indifferent to his condition. The moment Fair arrived at UMC, he received medical attention from Travis. (ECF No. 46 at 9). Within six minutes of his arrival, Doud performed an initial evaluation. (ECF No. 46 at 10). Within the next hour, Fair obtained an orthopedic consultation. (ECF No. 46 at 10). Just after the consultation, Wells conducted a diagnostic test. (ECF No. 46 at 10–11). Thereafter, Lee, Roehr, Howard, and Wentz diagnosed and performed a procedure on Fair. (ECF No. 46 at 11).

Even making all inferences in favor of Fair, this alleged series of events shows that the Individual Providers did appreciate the high degree of risk involved with Fair's condition, did realize the consequences of a failure to treat, and did move to timely diagnose and treat Fair.

Fair's well-pled allegations, then, amount to a claim for relief from the Individual Providers' failure to *correctly* diagnose Fair and treat him according to that diagnosis. To wit, Fair pleads that Travis "incorrectly assessed" and "failed to recognize" Fair's injury;

Doud "incorrectly assumed" Fair's injury was secondary to a compartment syndrome; Wells "failed to correctly interpret" the compartmental pressures, "incorrectly diagnosed" Fair, and "failed to perform a physical exam" or "order a CTA" of Fair's right leg; and Lee, Roehr, Howard, and Wentz "failed to correctly interpret" the compartmental pressures and physical evidence, leading to them "incorrectly diagnos[ing]" Fair with a compartment syndrome. (ECF No. 46 at 9–11).

The only reasonable inference the court can surmise from these allegations is that the Individual Providers each misdiagnosed Fair and mistreated him due to those misdiagnoses. However, misdiagnoses do not establish constitutional violations. *See Gordon v. Cty. of Orange*, 6 F.4th 961, 970 (9th Cir. 2021).

When a case involves "choices between alternative courses of treatment," the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that "they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014)).  Fair makes no such showing.

The allegations before the court certainly create some plausible claim for relief, but not for any legally cognizable claim through Section 1983 for deliberate indifference or medically unacceptable conduct.  The only cognizable claims alleged here are a medical malpractice claim, a professional negligence claim, or some other state law tort claim for breach of the duty of care between a medical professional and a patient. *See Estelle v. Gamble*, 429 U.S. 97, 105–08 (1976) (In the context of a prisoner's Eighth Amendment claim, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. . . . A medical decision not to order an X-ray, or like measures does not represent cruel and unusual punishment. At most it is medical malpractice . . . .").

Regardless of how or why Fair amended his complaint to remove the claim for medical malpractice/professional negligence, he has abandoned the legally cognizable avenue for his allegations against the Individual Providers.  Considering the high standard of

James C. Mahan
U.S. District Judge

pleading for a violation of pretrial detainee's Fourteenth Amendment rights under Section 1983 claim against individual defendants, Fair simply does not allege facts sufficient to push his allegations against the Individual Providers across the line from conceivable to plausible.

Accordingly, Fair fails to state a claim for relief against defendants Chasity Travis, Jenna Doud, Jessee Wells, Scott Lee, Casey Roehr, Shain Howard, and Brock Wentz. Therefore, the court dismisses those defendants from this matter.

With the Individual Providers dismissed, UMC remains as the only party joined to the motions to dismiss. (ECF No. 65). However, as Fair failed to plausibly plead that any UMC employee violated his Fourteenth Amendment rights, he cannot prove that those non-existent violations were pursuant to an official policy or custom or that they were ratified by someone with final policy-making authority.

Accordingly, Fair fails to state a claim for relief against UMC. Therefore, the court dismisses UMC as a defendant from this matter.

### IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wentz's motion to dismiss (ECF No. 50) be, and the same hereby is, GRANTED. Fair's claim is DISMISSED against defendants Wentz, Doud, Wells, Howard, and Lee, without prejudice.

IT IS FURTHER ORDERED that Roehr's motion to dismiss (ECF No. 57) be, and the same hereby is, GRANTED. Fair's claim is DISMISSED against defendants Roehr, Travis, and UMC, without prejudice.

IT IS FURTHER ORDERED that Fair may file an amended claim within 21 days of this order. Failure to do so will result in dismissal of his claim against the Individual Providers and UMC with prejudice.

DATED September 16, 2021.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**