**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Parnell Jay Fair,

          Plaintiff,

   v.

Las Vegas Metropolitan Police Department, et al.,

          Defendants.

Case No. 2:20-cv-01841-JCM-BNW

**ORDER**

      Before the Court is Plaintiff Fair's motion to amend his complaint. ECF No. 97. Defendants partially opposed this motion (ECF No. 101), and Fair replied (ECF No. 106). Because Defendants failed to carry their burden to show that amendment is futile, the Court grants Fair's motion.

**I.**    **Background**

      This case arises out of the following allegations: In 2018, Mr. Fair was sitting in his car at a Sonic drive-in. ECF No. 97-2 at 4 (proposed Second Amended Complaint). LVMPD officers were called about a suspicious vehicle. *Id.* Officer Turley arrived on scene at 2:41 a.m. *Id.* At this time, Fair exited his vehicle and Turley chased him on foot for approximately 30-seconds. *Id.* Turley tackled Fair, dislocated his knee, and injured multiple ligaments. *Id.*

      After being tackled and suffering this injury, Fair did not resist arrest or attempt to flee. *Id.* Instead, he immediately informed Turley that his leg was hurt. *Id.* He told Turley that his leg was broken and complained of agonizing pain. *Id.* Turley responded, "I don't care about your legs." *Id.*

      Fair continued to tell Turley that he was in pain and "begged for help." *Id.* Turley responded, "Can you stop talking? You made me run after you so you don't get to do anything." *Id.*

An EMT who was nearby approached Turley and Fair and asked if they needed assistance. *Id.* Turley told the EMT that Fair was claiming his leg was broken. *Id.* Fair again complained to both the EMT and Turley about his leg. *Id.* at 5. Turley responded, "Well, that's what happens when you run." *Id.*

Shortly thereafter, LVMPD Officer Ryndak arrived on scene. *Id.* Officers searched Fair as he continued "to beg for help." *Id.* Fair also begged officers to loosen his handcuffs. *Id.*

The EMT then asked Turley, "[d]o you guys need us?" *Id.* Turley rejected this offer of help stating, "No, I mean…he's going to continue to complain, so." *Id.* Turley then told Fair that he would loosen Fair's handcuffs if Fair would stop talking. *Id.* Ryndak added, "[w]hy don't you just shut the fuck up? Shut the fuck up." *Id.* Turley also stated, "What did I tell you? If you run, you don't get anything after that. No courtesy. No common courtesy." *Id.*

Fair continued "begging for assistance" for his leg. *Id.* Ryndak then asked Turley if the EMTs (who were now across the street) were going to come check Fair out. *Id.* Turley had already rejected the EMT's offer of assistance and told Ryndak that he did not think the EMTs were coming to look at Fair. *Id.* Accordingly, Ryndak called for medical to come look at Fair. *Id.* However, shortly thereafter, Ryndak cancelled this call for medical. *Id.*

Fair continued to complain of "severe pain" in his leg. *Id.* Turley and Ryndak told him that he was going to be transported to CCDC. *Id.* At this point, they demanded that Fair stand up and walk. *Id.* Fair told them that he could not walk. *Id.* Turley stated, "regardless if you can't walk or not I'll wheel you into jail. So stand-up." *Id.* at 5-6. Ryndak can be heard laughing in the background of officers' bodycam footage that captures this exchange. *Id.* at 6. Officers forced Fair into Ryndak's patrol car. *Id.*

Sergeant Walford then arrived on scene, and officers transported Fair back to the Sonic drive-in. *Id.* Officers mocked Fair (stating that he "look[ed] like Charles Barkley" "sweating like Shaq on the foul line") before forcibly marching him to Turley's patrol car. *Id.* Officers stated that Fair was "playing games," even though Turley and Walford had to physically hold Fair up as he struggled to get to Turley's vehicle. *Id.*

Officers then transported Fair to CCDC. *See id.* At CCDC, medical personnel instructed Turley to immediately take Fair to University Medical Center (UMC), a nearby hospital. *Id.* Fair arrived at UMC at approximately 5:38 a.m., nearly three hours after he was initially tackled by Turley. *See id.* at 4, 6.

One of the first medical professionals to see Fair observed that he was "clearly in substantial pain as he was 'writhing in the exam room, unable to sit still.'" *Id.* at 6. Several other medical professionals saw Fair at UMC and performed various tests. *Id.* at 6-8. Medical professionals made mistakes in assessing Fair. *Id.* Eventually, a vascular surgeon determined that Fair had lost circulation to the lower part of his leg, which is a "fairly classic vascular injury" common with knee dislocations. *Id.* at 8. The surgeon determined that because of the damage, Fair would have little to no function in his lower right leg. *Id.* As a result, Fair's leg was amputated. *Id.*

Fair now seeks to amend his complaint to (1) clarify and streamline the relevant facts after having conducted depositions and reviewed officers' bodycam footage; (2) eliminate LVPMD as a defendant; (3) eliminate Fair's cause of action under the Eighth and Fourteenth Amendments; (4) eliminate several allegations against medical providers that were previously dismissed; and (5) add two Fourth Amendment causes of action against Turley and Ryndak (for violation of Fair's Fourth Amendment right (i) to objectively reasonable post-arrest medical care and (ii) to be free from excessive use of force). ECF No. 97 at 3; ECF No. 97-2 at 8, 11.

Defendants only oppose Fair's request to add two Fourth Amendment claims against Turley and Ryndak. *See* ECF No. 101 at 1. In reply, Fair concedes that his Fourth Amendment excessive force claim against Ryndak is futile. *See* ECF No. 106 at 2 ("Defendants first argue, and Plaintiff concedes, that Plaintiff's excessive force claim against Ryndak is futile. After reviewing the evidence, Plaintiff agrees to remove his claim for violation of his right to be free from excessive force against Defendant Ryndak."). Accordingly, the Court must consider only whether Fair should be permitted to amend his complaint to add Fourth Amendment claims for violation of his right (1) to objectively reasonable post-arrest medical care against Ryndak and Turley and (2) to be free from excessive use of force against Turley.

1    II.     **Analysis**

2           Generally, a party may amend its pleading once "as a matter of course" within twenty-one

3    days of serving it, or within twenty-one days after service of a responsive pleading or motion

4    under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading

5    only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

6    "The court should freely give leave when justice so requires." *Id.*

7           "The court considers five factors [under Rule 15] in assessing the propriety of leave to

8    amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and

9    whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*,

10   655 F.3d 984, 995 (9th Cir. 2011). "The standard for granting leave to amend is generous." *Id.*

11   Critically, "the nonmovant bears the burden of showing why amendment should not be granted."

12   *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986).

13          Here, as explained below, Defendants did not meet their burden to show that amendment

14   should be denied.

15          A.     **Defendants Have Not Carried Their Burden to Show that Fair's Fourth**
                    **Amendment Inadequate Medical Care Claim Against Ryndak is Futile.**
16

17          Defendants argue that Fair's Fourth Amendment inadequate post-arrest medical care

18   claim against Ryndak is futile ECF No. 101 at 7-11. Defendants argue that Fair's *Fourth*

19   Amendment claim should really be a *Fourteenth* Amendment claim and that Fair cannot plausibly

20   allege the elements of a *Fourteenth* Amendment claim. *Id.* at 7.

21          Fair disagrees that his *Fourth* Amendment claim must be pled as a *Fourteenth*

22   Amendment claim. ECF No. 106 at 3-4.

23          Fair is correct. The Ninth Circuit explicitly addressed this question in *Est. of Cornejo ex*

24   *rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015).

25          Defendants contend that Cornejo's right to medical care was governed by the
             *Fourteenth* Amendment and that liability was limited to cases in which officers
26           were deliberately indifferent to medical needs. This is incorrect. In *Tatum v. City*
             *&   County   of   San   Francisco,* we   found   that   suspects   have
27           a *Fourth* Amendment right to "objectively reasonable post-arrest [medical] care"
             until the end of the seizure. 441 F.3d 1090, 1099 (9th Cir. 2006). This means that
28

> officers must "seek the necessary medical attention for a detainee when he or she
> has been injured while being apprehended by either promptly summoning the
> necessary medical help or by taking the injured detainee to a hospital."

*Id.* (emphasis added); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (analyzing post-arrest medical care claim under Fourth Amendment and holding that "police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment"); *Parker v. City of Los Angeles*, 726 F. App'x 546, 548 (9th Cir. 2018) ("The Fourth Amendment 'requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'").

Defendants' only argument that Fair's post-arrest medical care claim is futile stems from their incorrect assertion that Fair's claim should have been asserted (and should be analyzed) as a Fourteenth Amendment claim. Accordingly, Defendants' argument fails.[1]

**B.     Defendants Have Not Met Their Burden to Show that Fair's Claims are Futile Because Defendants are Entitled to Qualified Immunity**

Defendants argue that Fair's claims are futile because Turley and Ryndak are entitled to qualified immunity.

When determining whether qualified immunity applies, courts must ask "(1) 'whether there has been a violation of a constitutional right;' and (2) 'whether that right was clearly established at the time of the officer's alleged misconduct.'" *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627 (9th Cir. 2022).

Regarding whether there has been a violation of a constitutional right to be free from excessive force, courts balance the "nature and quality of the intrusion" on a person's Fourth Amendment rights "against the government's countervailing interest in the force used." *Id.* at 628; *see Graham v. Connor*, 490 U.S. 386, 396 (1989) (same). To balance these interests, courts

---

[1] The Court will not create arguments for Defendants and separately analyze whether Fair's claim is futile under a Fourth Amendment analysis. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts will not "manufacturer arguments" for litigants).

evaluate "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The "touchstone in evaluating an officer's use of force is objective reasonableness." *Est. of Aguirre*, 29 F.4th at 627. "Reasonableness" must be judged from the "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The ultimate question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Regarding whether the right was clearly established at the time of officers' misconduct, cases can fall into two categories.

First, a right can be clearly established because there is law putting an officer on notice that his conduct was unlawful. *Est. of Aguirre*, 29 F.4th at 629. To be clearly established, "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (cleaned up). There need not be a case directly on point; the relevant question is whether, at the time of the officer's conduct, the law gave the officers "fair warning that their conduct was unconstitutional." *Id.* at 64, 66. "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (cleaned up). "If the right is clearly established by decisional authority of the Supreme Court or this Circuit," the inquiry ends. *Ballentine*, 28 F.4th at 64. But "only cases that predate the incident are relevant" to this inquiry. *Est. of Aguirre*, 29 F.4th at 629.

Second, a right can be clearly established without relevant caselaw if it is "obvious." *Id.* ("[N]o 'body of relevant case law' is necessary in an 'obvious case.'"). For example, the Ninth Circuit recently explained that a reasonable officer "would not need more Ninth Circuit cases to know that" not obtaining medical care for "a man who was severely beaten in an unreasonable use of force, had clear injuries, was shaking uncontrollably, had substantial and increasing difficulty breathing, and was groaning and non-responsive" "would violate a suspect's

constitutional rights." *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 921 (9th Cir. 2015).

> **1.    Defendants Have Not Met Their Burden to Show that Turley is Entitled to Qualified Immunity on Fair's Excessive Force Claim[23]**

Defendants do not develop any argument that there was no violation of Fair's constitutional right to be free from excessive force. *See* ECF No. 101 at 12-13. The Court will not manufacturer an argument for Defendants. Accordingly, the Court assumes for purposes of this motion that Turley used excessive force when he forced Fair to walk despite the fact that (1) Fair repeatedly stated that his leg was broken, (2) Fair repeatedly stated he was in agonizing pain and could not walk, and (3) EMTs were nearby and could have assessed whether Fair has "faking it" or actually severely injured and aided him if the latter was true.

Defendants do assert, however, that Turley is entitled to qualified immunity because no precedent exists that shows that officers used excessive force. ECF No. 101 at 12.

Fair responds by arguing that Turley's use of excessive force is so obvious that it "does not need on-point case law." ECF No. 106 at 8. Fair also argues, however, that Ninth Circuit cases put Turley on notice that his conduct constituted excessive force. *Id.* at 8-10.

As the Court previously noted, on a motion to amend, it is the Defendants' burden to prove why a claim is futile. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986). Here, Defendants argue that Fair's excessive force claim against Turley is futile because he is entitled to qualified immunity. However, Defendants did not address whether

---

[2] As previously noted, Plaintiff agreed to withdraw his excessive force claim against Ryndak. As such, the Court need not analyze whether Ryndak would be entitled to qualified immunity against this claim.
[3] Defendants assert that Fair attached bodycam footage to his proposed amended complaint, so the Court may consider this. ECF No. 101 at 11. Plaintiff appears to agree that the Court can consider the bodycam footage. *See* ECF No. 106 at 10. However, it does not appear to the Court that Fair attached the bodycam footage to his proposed complaint (ECF No. 97-2) but rather attached it to his motion to amend. *See* ECF No. 97-1. Accordingly, the Court does not know that it is appropriate to consider the bodycam footage (and the ambulance records) attached the motion to amend. Nonetheless, the Court reviewed these exhibits and concludes that whether the Court considers them or not, its conclusion would not change.

1    the violation of Fair's right was "obvious" and instead only asserted that a body of relevant

2    caselaw does not exist. Because Defendants did not address the obviousness of the

3    violation and it is their burden to prove why amendment would be futile, the Court cannot

4    find that amendment is futile. Put another way, the violation of Fair's Fourth Amendment

5    right appears obvious, and Defendants have not carried their burden to explain why this is

6    not so.

7              Further, without deciding the issue, the Court notes that it appears that multiple

8    Ninth Circuit cases gave Turley a "fair warning" that Turley had an obligation to help Fair

9    after he was injured while being apprehended, and that forcing him to walk on a potentially

10   broken leg while he was in agony would violate his constitutional rights. *See Ballentine*,

11   28 F.4th at 64 (for a right to be clearly established, the law must give officers "fair warning

12   that their conduct was unconstitutional."). First, there is binding Ninth Circuit caselaw that

13   provides that "in a situation in which an arrestee surrenders and is rendered helpless, any

14   reasonable officer would know that a continued use of [a] weapon or a refusal without

15   cause to alleviate its harmful effects constitutes excessive force." *LaLonde v. Cnty. of*

16   *Riverside*, 204 F.3d 947, 961 (9th Cir. 2000). Here, according to the allegations, by the

17   time Turley forced Fair to walk, Fair had surrendered and was helpless. Fair also alleges

18   he repeatedly stated that he was in agonizing pain, he thought his leg was broken, and he

19   could not walk. Accordingly, it appears that any reasonable officer would know that forcing

20   Fair to walk under these circumstances would constitute excessive force. Indeed, any

21   reasonable officer would know that he must actually do *more*, since multiple Ninth Circuit

22   cases require officers to "seek the necessary medical attention for a detainee when he or

23   she has been injured while being apprehended by either promptly summoning the

24   necessary medical help or by taking the injured detainee to a hospital." *Est. of Cornejo*,

25   618 F. App'x at 920; *see also Tatum*, 441 F.3d at 1098–99. *LaLonde*, *Est. of Cornejo*, and

26   *Tatum* all appear to have given Turley a "fair warning" that Turley had an obligation to

27   help Fair after he was injured, and that forcing him to walk on a potentially broken leg

28   would violate his constitutional rights. Accordingly, on the briefing before the Court, it

cannot find that Turley has conclusively established a right to qualified immunity on Fair's excessive force claim such that amendment would be futile.[4]

> **2.**    **Defendants Have Not Met Their Burden to Show that They are Entitled to Qualified Immunity on Fair's Post-Arrest Medical Care Claim**

Defendants' argument that officers are entitled to qualified immunity on Fair's post-arrest medical care claim is less than one page and minimally developed. *See* ECF No. 101 at 13. Defendants do not cite any legal authority regarding what officers are required to do in terms of providing post-arrest medical care to satisfy the Fourth Amendment. *Id.* Defendants also continue to incorrectly assume that Fair is asserting a *Fourteenth* Amendment deliberate indifference claim, arguing that no precedent exists to show that officers were deliberately indifferent to Fair's medical needs. *See id.* Defendants also state that officers did not deny Fair medical care because an EMT was on site and said Fair was "fine."[5] *Id.*

Fair argues that the Fourth Amendment requires officers to provide post-arrest medical care (by requesting medical assistance or taking the arrestee to the hospital) in a reasonable amount of time. ECF No. 106 at 11. Fair argues that neither officer did this and thus should not be entitled to qualified immunity. Regarding Turley, Fair argues that Turley did nothing to provide Fair medical assistance, even though an EMT happened to be on scene and asked if Fair needed help. *Id.* at 11-12. Regarding Ryndak, Fair argues that he also did nothing to actually provide Fair with medical care. *Id.* at 12-14. Though Ryndak called for medical care after Turley told him that Fair had not been examined, Ryndak cancelled this request shortly thereafter before anyone saw Fair. *Id.* Fair also argues that neither officers' failure to call for medical assistance is justified by the fact that an on-scene

---

[4] While Defendants argue that a reasonable officer could have believed Fair was faking his injury (ECF No. 101 at 12), Defendants neither cite any authority for this proposition nor do they explain how this alleged fact should impact the Court's analysis. Again, Defendants have not carried their burden to show why they are entitled to qualified immunity at the amendment stage.

[5] The fact that an EMT said Fair was "fine" is not pled but is shown in Turley's bodycam footage. *See* ECF No. 97-2; *See* ECF No. 97-3, Ex. 2 at 5:00-5:17.

EMT told Turley that Fair was "fine," as Defendants argue. *Id.* at 13. This is so because both officers knew that Fair had not been examined by the EMT or any other medical personnel. *Id.*

The Court finds that Defendants failed to meet their burden to show that officers are entitled to qualified immunity on Fair's Fourth Amendment post-arrest medical care claim. Defendants have not developed any argument that either Fair's constitutional rights were not violated by officers or that the right was not clearly established.

Further, without deciding the issue, it appears that Fair pled that officers violated a clearly established right to reasonable post-arrest medical care.

The Ninth Circuit has repeatedly held that suspects have a Fourth Amendment right to "objectively reasonable post-arrest [medical] care until the end of the seizure. This means that officers *must* seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either *promptly* summoning the necessary medical help or by taking the injured detainee to a hospital." *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) (cleaned up and emphasis added); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1098–99 (9th Cir. 2006) (analyzing post-arrest medical care claim under Fourth Amendment and holding that "police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment"); *Parker v. City of Los Angeles*, 726 F. App'x 546, 548 (9th Cir. 2018) ("The Fourth Amendment 'requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'").

Here, Fair pled that officers did not promptly summon the necessary medical care or take him to the hospital. Fair pled that at approximately 2:41 a.m., he was tackled by Turley. ECF No. 97-2 at 4. Fair "immediately" told Turley that his leg was hurt and he thought it was broken. *Id.* Turley responded by saying, "I don't care about your legs." *Id.* When Fair repeatedly complained about his pain, Turley said, "Can you stop talking? You

made me run after you so you don't get to do anything." *Id.* An EMT happened to be nearby and asked if Fair was ok. *Id.* Turley could have asked the EMT to assess Fair and provide any necessary medical care. Instead, as Fair continued to complain about his leg to Turley and the EMT, Turley said, "Well, that's what happens when you run." *Id.* 5. The EMT asked Turley directly, "[d]o you guys need us?" *Id.* Turley declined to allow Fair to be examined or helped by stating, "No, I mean…he's going to continue to complain, so." *Id.* Turley also stated, "What did I tell you? If you run, you don't get anything after that. No courtesy. No common courtesy." *Id.* Ryndak knew that Fair had not been examined and that the EMTs (who were across the street at this point) were not coming back to examine Fair. *See id.* This prompted Ryndak to call for medical. *Id.* However, he cancelled this call shortly thereafter, before anyone saw Fair. *See id.* Officers then forced Fair to walk despite his complaints of severe pain and observing that he needed assistance walking. *See id.* at 5-6. Only after officers transported Fair to CCDC and CCDC personnel told them to take Fair to the hospital did they do so. *Id.* at 6. Fair arrived at the hospital at approximately 5:38 a.m., nearly three hours after having been tackled by Turley. *See id.*

In the absence of any developed argument by Defendants, these allegations appear sufficient to plead that officers did not provide Fair "objectively reasonable" post-arrest medical care by promptly summoning the necessary medical help or by promptly taking Fair to a hospital. Instead, Fair pled that officers (1) refused prompt medical help (by sending an on-scene EMT away who could have, at a minimum, assessed whether Fair was truly injured or "faking it") and (2) waited nearly three hours to take Fair to the hospital. Further, though an EMT told officers Fair was "fine," it is far from clear that it was objectively reasonable for officers to rely on this statement. This is so because the EMT made this statement off-the-cuff without *any* examination of Fair whatsoever. *See* ECF No. 97-3, Ex. 2 at 5:00-5:17.

In short, Defendants have simply failed to carry their burden, at this stage, to show that they are entitled qualified immunity.

**C.    Defendants Have Not Established that They Would be Prejudiced by Amendment.**

Defendants argue that allowing Fair to amend his complaint would unduly prejudice them because "there is—at minimum—a serious question regarding whether the defense of qualified immunity applies in this case." ECF No. 101 at 14. Defendants essentially argue that the Court should decide whether qualified immunity applies before Fair is allowed to amend his complaint. *Id.* Defendants further contend that if the Court requires additional briefing or evidence, it should allow the parties to submit this information before Fair is allowed to amend his complaint. *Id.* at 15.

The Court agrees with Defendants that it should consider their arguments regarding why they may be entitled to qualified immunity before granting leave to amend. The Court did that. The Court disagrees, however, that it should give Defendants another bite at the apple—and tell Defendants what else they need to submit to the Court—to show that they are entitled to qualified immunity. It is Defendants' job to develop their arguments and submit them to the Court. Defendants had this opportunity and are thus not unfairly prejudiced by amendment.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend (ECF No. 97) is GRANTED.


DATED: August 3, 2022

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE