UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PARNELL JAY FAIR, | Case No. 2:20-CV-1841 JCM (BNW) |
| Plaintiff(s), | ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendant(s). | |

Presently before the court is defendant Lukas Turley ("Turley")'s motion for summary judgment. (ECF No. 128). Plaintiff Parnell Jay Fair ("plaintiff") filed a response (ECF No. 138), to which Turley replied. (ECF No. 146).

Also before the court is defendant Alexander Ryndak ("Ryndak")'s motion for summary judgment. (ECF No. 129). Plaintiff filed a response (ECF No. 139), to which Ryndak replied. (ECF No. 145).

**I.     Background**

This case arises out of defendants' conduct while arresting plaintiff and the subsequent treatment of an injury plaintiff sustained during his arrest.

In the early morning of October 7, 2018, plaintiff was sitting inside his motor vehicle parked outside a fast food restaurant. (ECF No. 118 at 3). Upon plaintiff's exiting his automobile, Turley, an officer employed by the Las Vegas Metropolitan Police Department ("LVMPD") who was responding to a call regarding a suspicious vehicle, exited his patrol car

**James C. Mahan**
**U.S. District Judge**

and began to chase plaintiff by foot, eventually tackling him from behind. (*Id.*). While Turley was searching plaintiff, plaintiff made numerous statements to Turley and complained that his right leg was broken. (*Id.*).

When a senior medic arrived on scene, Turley informed him that plaintiff was complaining of a fractured leg. (*Id.*). Shortly after, Ryndak, another LVMPD officer, arrived at the scene in a separate patrol car. (*Id.* at 4). The complaint alleges that the medic asked Turley if the officers needed him to stay, with Turley responding that the medic's presence was not necessary. (*Id.*). Turley and a sergeant on scene escorted plaintiff from Ryndak's vehicle to Turley's vehicle, encompassing a distance of roughly twenty feet. (ECF No. 138 at 17).

Turley transported plaintiff to Clark County Detention Center ("CCDC"), where medical personnel instructed him to bring plaintiff to University Medical Center ("UMC") immediately. (ECF No. 118 at 5). The nurse at UMC performed a "focused assessment" of plaintiff's circulation and incorrectly labeled his circulation as "within defined limits." (*Id.*).

The nurse failed to recognize that plaintiff's right knee was unstable, that he had no pulse in his right leg, and that his right leg was pale. (*Id.*). A physician assistant incorrectly diagnosed plaintiff with a compartment syndrome. (*Id.* at 6). Plaintiff alleges that according to emergency medicine and orthopedic literature, the physician assistant should have ordered a computer tomography angiography ("CTA") as soon as discovering any signs of impaired circulation, such ischemic color change in the extremity or a diminished pulse. (*Id.*).

UMC staff eventually performed the CTA, but they did so nine hours after the initial injury, well beyond the salvage point for plaintiff's right lower limb. (*Id.* at 7). Upon determining that plaintiff would have little to no function in his lower right leg, the lead doctor recommended and performed an amputation. (*Id.*).

Plaintiff's second amended complaint asserts two causes of action against Turley and Ryndak: (1) violation of his Fourth Amendment right to objectively reasonable post-arrest medical care and (2) violation of his Fourth Amendment right to be free from excessive force under 42 U.S.C. § 1983. (*Id.* at 7-11).

Defendants move for summary judgment on both claims. Given the high burden needed to overcome the defense of qualified immunity, the court grants defendants' separate motions for summary judgment.

## II.   Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

(9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324.

**James C. Mahan**
**U.S. District Judge**

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

**III.  Discussion**

    A.  <u>Plaintiff's procedural objections to defendants' exhibits</u>

As a preliminary matter, the court must first address plaintiff's objections to defendants' motion for summary judgment exhibits. (ECF No. 142). The basis for plaintiff's objections is that "it makes it extremely difficult for counsel and the [c]ourt to discern the evidence to which [d]efendants refer to [sic] in both of their motions for summary judgment." (*Id.* at 1). Turley's motion consists of two-hundred forty-two (242) pages of exhibits, which plaintiff believes is a violation of Local Rule IA 10-3(i). (*Id.*).

Local Rule IA 10-3 provides that "exhibits in excess of 100 pages must be submitted in a separately bound appendix." LR IA 10-3(i). Plaintiff also objects to defendants' failure to include cover sheets and accompanying citations. (ECF No. 142 at 2).

The court overrules plaintiff's objections. Plaintiff overlooks the first sentence of Local Rule IA 10-3, which elucidates "[n]o more than 100 pages of exhibits may be attached to documents filed or submitted to the court *in paper form*." LR IA 10-3(i) (emphasis added). Given that the exhibits are on a disc, Local Rule IC 2-2(a)(3)(A) applies as opposed to Local Rule IA 10-3. *See* LR IC 2-2(a)(3)(A) (governing filer responsibilities when electronically filing documents). This rule is silent on requiring an appendix for exhibits submitted electronically, only mandating that the exhibits be attached as separate electronic files. *See id.* Turley's motion for summary judgment satisfies this requirement.

Moreover, defendants submitted an errata to Turley's motion for summary judgment. (ECF No. 147). The errata includes cover pages to the attached exhibits and two amended citations that include page numbers of the exhibits. (*Id.* at 2-4). Defendants have thus cured any procedural deficiencies regarding their submission of exhibits, and the court overrules plaintiff's objection.

B. <u>Post-arrest medical care</u>

Defendants assert the defense of qualified immunity for plaintiff's claim for violation of his Fourth Amendment right to objectively reasonable post-arrest medical care.

Qualified immunity insulates public officials "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "all but the plainly incompetent or those who knowingly violate the law." *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**James C. Mahan**
**U.S. District Judge**

- 6 -

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court must consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court must determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the *plaintiff's burden* to show that the constitutional right was clearly established. *Sorrels*, 290 F.3d at 969 (emphasis added).

To be "clearly established," "case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017). "If officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) (internal citations omitted).

Plaintiff has failed to present developed case law to demonstrate that officers of reasonable competence would have acted differently than did Turley and Ryndak, who chose to transfer plaintiff to CDCC instead of UMC. The burden is on plaintiff to show undisputedly that reasonably competent officers would have transported plaintiff directly to UMC. *See id*.

The key party in the facts of this case is the senior medic. The medic communicated directly to Turley that plaintiff was "fine." ECF No. 148-6 at 0:04:37-0:06:15. Turley informed the medic that plaintiff told him his leg was broken. *Id*. The medic looked down at plaintiff and said, "[o]h, he's fine." *Id*. In his deposition, the medic confirmed his assessment of plaintiff, noting that he "didn't see any obvious deformities" and saw "purposeful movement in the extremity." ECF No. 148-5 at 12. The medic was far more qualified to give his opinion on a medical condition than Turley and Ryndak, and the officers made their decision to transfer plaintiff to CDCC based on the medic's opinion.

Plaintiff counters by arguing that pursuant to Ninth Circuit case law, arresting officers have a constitutional obligation to provide medical care to a person injured during an arrest. (ECF No. 139 at 19). Plaintiff also claims that the failure to do *anything* is a violation of the arrestee's Fourth Amendment rights and reason to deny qualified immunity. (*Id.*); *see Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1098-99 (9th Cir. 2006) (emphasis added).

*Tatum* is inapposite to the instant matter. In *Tatum*, the plaintiff sustained visible and patently obvious injuries, rendering his need for immediate medical care. *Id.* at 1099. Specifically, the plaintiff in *Tatum* had bulging eyes and exhibited audible, heavy breathing. *Id*. Here, plaintiff had no physical deformities visible to anyone at the scene, and the only indication defendants had of an apparent injury to plaintiff was his vocal complaints.

Finally, there is nothing to contradict Turley's statement that he transported plaintiff to CCDC knowing plaintiff would receive medical attention. Simply put, the facts do not suggest that any reasonably competent officer should have disregarded the opinions of the senior medic, who indicated that plaintiff was "fine." *See Shafer*, 868 F.3d at 1117. The court grants

James C. Mahan
U.S. District Judge

- 8 -

defendants' motions for summary judgment as to plaintiff's claim for violation of his Fourth Amendment right to objectively reasonable post-arrest medical care.

### C. Excessive force

Turley again asserts the defense of qualified immunity for plaintiff's claim for violation of his Fourth Amendment right to be free from excessive force.[1] The court adopts Turley's reasoning and rules that he is afforded qualified immunity for the excessive force claim.

"Use of excessive force is an area of law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Kisela*, 138 S. Ct. at 1153 (internal citation omitted).

A plaintiff may allege excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009). However, in an excessive force case without any allegations of physical contact, finding a *clearly established* violation is particularly difficult. *Merrill v. Schell*, 279 F. Supp. 3d 438, 446 (W.D.N.Y. 2017) (emphasis added).

Plaintiff alleges that excessive force occurred because "a reasonable officer on the scene would not have forced [him] to walk on the very knee and leg that was [sic] severely injured." (ECF No. 118 at 10). Plaintiff's response fails to show a case remotely analogous to the instant

---

[1] The second amended complaint indicates that plaintiff asserts this cause of action against both defendants, but the facts mention Turley only. (ECF No. 118 at 10-11). Turley and a sergeant on scene escorted plaintiff from Ryndak's vehicle to Turley's vehicle, not Ryndak. (ECF No. 138 at 17). Accordingly, Ryndak did not address this claim in his motion. Regardless, the court's analysis of the controlling law is the same for both defendants.

James C. Mahan
U.S. District Judge

- 9 -

matter. As Turley argues, "there are no cases which show an officer used excessive force . . . where . . . an EMT did not indicate there was an emergency . . . the [o]fficer knew that the plaintiff would be medically evaluated at jail, the plaintiff only walked for approximately 40 seconds and only to get in the vehicle that would transport him to jail, [and] the officer told the plaintiff he had been cleared by medical without the plaintiff denying it . . . ." (ECF No. 128 at 28).

Additionally, Turley claims that in his experience, some suspects have feigned injury to avoid going directly to jail. (*Id.* at 6). Specifically, Turley testified, "I thought he was just saying he [had] a broken leg as a way to get out of jail." (ECF No 147-7 at 31).

Plaintiff fails to identify binding precedent that rebuts Turley's argument that he did not violate plaintiff's Fourth Amendment right to be free from excessive force by having him walk from Ryndak's vehicle to Turley's vehicle. The court grants summary judgement as to plaintiff's excessive force claim.

## IV.     Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Lukas Turley's motion for summary judgment (ECF No. 128) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Alexander Ryndak's motion for summary judgment (ECF No. 129) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment on behalf of defendants and close this case.

DATED March 5, 2024.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**